FILED

2008 May-09 PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA



ELECTRONICALLY FILED
4/5/2008 1:58 PM
CV-2008-901075.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| JOHNNY A. HOWARD, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action Number: |
| VERIZON WIRELESS SERVICES, LLC, a Corporation; TRANSUNION, LLC, a Corporation; | ) ) ) ) | |
| Defendants. | ) ) | |

### COMPLAINT

COMES NOW the Plaintiff, by and through counsel, in the above styled cause, and for his Complaint against the Defendants states as follows:

### Parties

1. The Plaintiff, Johnny A. Howard ("Plaintiff" or "Howard"), is a natural person who is a resident citizen of Alabama.

2. Defendant Verizon Wireless Services, LLC ("Defendant" or "Verizon") is a foreign corporation doing business in Alabama and in this county.

3. Defendant TransUnion, LLC ("Defendant" or "TransUnion") is a foreign company (incorporated in Delaware) that engages in the business of maintaining and reporting consumer credit information and does business in Alabama and in this county.

**Exhibit A**

**Factual Allegations**

4.   Plaintiff is suffering from Verizon continuing to try to collect a debt that is not
     Plaintiff's and continuing to falsely report on his credit reports that he owes
     Verizon for a cell phone account.

5.   Plaintiff discovered in December 2002 that Verizon claimed he owed money
     when he was called by Verizon collections.

6.   Plaintiff did not and does not owe on or have any responsibility for this account.

7.   Plaintiff informed Verizon that he did not have this account with Verizon and
     after Verizon gave Plaintiff the address of the account, Plaintiff informed Verizon
     this account may have been the work of an identity thief – a relative.

8.   Plaintiff was told by Verizon to fill out a police report and send to Verizon, which
     he did the next day.

9.   Plaintiff thought the matter was cleared up.

10.  Plaintiff then received, in 2003, a collection call from a collection agency on this
     account.

11.  Plaintiff told the collection agency the same thing as he had told Verizon months
     earlier.  Plaintiff then sent the collection agency the report.

12.  The collection agency said it would forward the police report to Verizon and
     return the account as this was an identity theft account.

13.  Plaintiff then discovered that despite all the above, Verizon had this false account
     on his credit reports.   The account number is 1507162XXX and the amount
     claimed is $1,086.00.

14. Plaintiff disputed with at least TransUnion and Equifax and attached the police report.

15. On September 15, 2006, TransUnion verified the account and left it on his credit report.

16. On September 19, 2006, Equifax deleted the account as a result of its investigation.

17. Plaintiff has suffered credit denials after TransUnion verified the account.

18. The account still remains on TransUnion and Experian.

19. Plaintiff has no relationship with Verizon on this account and has never agreed to be obligated by any arbitration agreement with Verizon.

20. Plaintiff has told Verizon who the identity thief may be but Verizon has refused to properly consider this information.

21. Plaintiff has repeatedly told Verizon it has the wrong person but this has only had the effect of Verizon intensifying its collection efforts against Plaintiff, including sending at least one collection agency after him and verifying on his credit reports the Verizon account as being Plaintiff's after disputes were made directly to the Consumer Reporting Agencies (CRAs) in accordance with the Fair Credit Reporting Act.

22. This wrongful conduct has drastically impacted Plaintiff's credit score and credit worthiness and has caused him past and future monetary loss, past and future emotional distress, and other damages that will be presented to the trier of fact.

## FIRST CLAIM FOR RELIEF
### Violations of the Fair Credit Reporting Act (FCRA)

23.    All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

24.    Plaintiff is a "consumer," as codified at 15 U.S.C. § 1681a(c).

25.    Equifax, Experian and TransUnion are each a "consumer reporting agency," as codified at 15 U.S.C. § 1681a(e).

26.    Verizon is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and constitutes a "furnisher," as codified at 15 U.S.C. § 1681s-2.

27.    Plaintiff notified at least Equifax and TransUnion directly in the summer of 2006 of a dispute on the Verizon account as it did not belong to Plaintiff. The CRAs directly and timely and properly notified[1] Verizon in accordance with the requirements of the FCRA.

28.    Plaintiff alleges that Verizon failed in all respects to conduct a proper and lawful reinvestigation from start to finish.

29.    Plaintiff alleges that TransUnion failed in all respects to conduct a proper and lawful reinvestigation from start to finish.

30.    TransUnion has at all relevant times failed to maintain reasonable procedures to assure maximum accuracy and has violated § 1681e(b).

---

[1] Alternatively, TransUnion did not properly notify Verizon of the dispute and thereby violated the FCRA in this manner. This knowledge is only known by TransUnion and Verizon until discovery is taken.

31.    All actions taken by Defendants were done with malice, were done willfully, recklessly and/or were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the FCRA and state law and/or that knew or should have known that its actions were in reckless disregard of the FCRA and state law.

32.    All of the violations of the FCRA and state law proximately caused the injuries and damages set forth in this Complaint.

## SECOND CLAIM FOR RELIEF
### State Law Claims

33.    All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

34.    All Defendants intentionally published false and defamatory information related to the Defendant Verizon account.

35.    Defendants acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint. This includes the initial reporting of Defendant Verizon account; the handling of any investigations on the accounts; and all other aspects as set forth in this Complaint.

36.    Defendant Verizon assumed a duty, through the subscriber agreement and other actions, to accurately report the account and to not report accounts which were false and do not belong to Plaintiff.

37.    Defendants violated all of the duties the Defendants had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

38.  It was foreseeable, and Defendants did in fact foresee it, that refusing to properly investigate and delete would cause the exact type of harm suffered by the Plaintiff.

39.  Defendants acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.   This includes the initial reporting of the Verizon account; the intentional refusal to properly delete the account; and all other aspects as set forth in this Complaint.

40.  Defendants invaded the privacy of Plaintiff as set forth in Alabama law, including publishing false information about Plaintiff's personal financial obligations.

41.  The Defendants acted with intentional, reckless, or wanton conduct in attempting to collect this debt (Defendant Verizon) and reporting this false information (all Defendants).

42.  Defendants have each intended that the CRAs and all who review the credit reports of Plaintiffs will rely upon the misrepresentations and suppressions of material facts related to this account which should never have been on Plaintiff's credit reports.   Such reliance has occurred which has damaged the Plaintiff.

43.  Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint and such conduct occurred before, during and after the disputes to Equifax, TransUnion, and/or Experian.

44.  As a result of this conduct, action, and inaction of all Defendants, Plaintiff has suffered damage as set forth in this Complaint.

## RELIEF SOUGHT

45.    An award of statutory, actual, compensatory and punitive damages, and costs of

the action including expenses, together with reasonable attorney's fees.

46.    Plaintiff also requests all further relief to which Plaintiff is entitled under Federal

and/or State law, whether of a legal or equitable nature.


Respectfully Submitted,

/s/ John G. Watts
**John G. Watts**
**Attorney for Plaintiff**


**OF COUNSEL:**
Watts Law Group, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattslawgroup.com


/s/ M. Stan Herring
**M. Stan Herring**
**Attorney for Plaintiff**


**OF COUNSEL:**
M. Stan Herring, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 714-4443
(888) 522-7167 *facsimile*
msh@mstanherringlaw.com

**Serve Defendants via certified mail at the following address:**

Verizon Wireless Services, LLC
c/o Corporation Service Company
701 Brazos Street, Suite 1050
Austin, Texas 78701

TransUnion, LLC
c/o Prentice-Hall Corporation System, Inc.
150 S. Perry St.
Montgomery, AL 36104



CORPORATION SERVICE COMPANY®

# Notice of Service of Process

WCE / ALL
Transmittal Number: 5707398
Date Processed: 04/09/2008

| | |
|---|---|
| **Primary Contact:** | Patricia Lyn Norris<br>Trans Union LLC<br>555 W. Adams Street<br>Chicago, IL 60661-3601 |

| | |
|---|---|
| **Entity:** | Trans Union LLC<br>Entity ID Number  1884665 |
| **Entity Served:** | Transunion LLC |
| **Title of Action:** | Johnny A. Howard vs. Verizon Wireless Services, LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Other |
| **Court:** | Circuit Court of Jefferson County, Alabama |
| **Case Number:** | CV-2008-901075 |
| **Jurisdiction Served:** | Alabama |
| **Date Served on CSC:** | 04/09/2008 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| **Plaintiff's Attorney:** | John G. Watts<br>205-879-2447 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number:<br>**01-CV-200**<br>Date of Filing:<br>04/05/2008 | ELECTRONICALLY FILED<br>4/5/2008 1:58 PM<br>CV-2008-901075.00<br>CIRCUIT COURT OF<br>JEFFERSON COUNTY, ALABAMA<br>ANNE-MARIE ADAMS, CLERK |

## GENERAL INFORMATION

### IN THE CIRCUIT OF JEFFERSON COUNTY, ALABAMA
### JOHNNY A HOWARD v. VERIZON WIRELESS SERVICES LLC ET AL

**First Plaintiff:** ☐ Business  ☑ Individual      **First Defendant:** ☑ Business  ☐ Individual
☐ Government  ☐ Other                                          ☐ Government  ☐ Other

### NATURE OF SUIT:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonnes
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☑ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture
    Appeal/Enforcement of Agency Subpoena/Petition to
    Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory
    Judgment/Injunction Election Contest/Quiet Title/Sale For
    Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**   F ☑ **INITIAL FILING**          A ☐ **APPEAL FROM**          O ☐ **OTHER**
                                                          **DISTRICT COURT**

                R ☐ **REMANDED**               T ☐ **TRANSFERRED FROM**
                                                          **OTHER CIRCUIT COURT**

**HAS JURY TRIAL BEEN DEMANDED?**   ☐ Yes  ☑ No

**RELIEF REQUESTED:**   ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**   WAT056        4/5/2008 1:50:28 PM        /s JOHN WATTS

**MEDIATION REQUESTED:**   ☐ Yes  ☑ No  ☐ Undecided



ELECTRONICALLY FILED
4/5/2008 1:58 PM
CV-2008-901075.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| JOHNNY A. HOWARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action Number: |
| | ) |
| VERIZON WIRELESS | ) |
| SERVICES, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

### SUMMONS

This service by Certified Mail of this Summons and Complaint is initiated upon written request of the Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:      Verizon Wireless Services, LLC
c/o Corporation Service Company
701 Brazos Street, Suite 1050
Austin, Texas 78701

The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights.  You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to the Plaintiff's attorney, **John G. Watts, Watts Law Group, P.C., 700 29th Street South, Suite 201, Birmingham, Alabama 35233. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.** You must also file the original of your Answer with the Clerk of this Court.

_____            _____
Date                                             Clerk



ELECTRONICALLY FILED
4/5/2008 1:58 PM
CV-2008-901075.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| JOHNNY A. HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: |
| | ) | |
| VERIZON WIRELESS | ) | |
| SERVICES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### SUMMONS

This service by Certified Mail of this Summons and Complaint is initiated upon written request of the Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:      **TransUnion, LLC**
**c/o Prentice-Hall Corporation System, Inc.**
**150 S. Perry St.**
**Montgomery, AL  36104**

The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights.  You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to the Plaintiff's attorney, **John G. Watts, Watts Law Group, P.C.,700 29th Street South, Suite 201, Birmingham, Alabama 35233. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.**  You must also file the original of your Answer with the Clerk of this Court.

_____          _____
Date                                              Clerk

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | **Case Number:**<br>01-CV-2008-901075.00 |
| --- | --- | --- |

**IN THE CIVIL COURT OF JEFFERSON, ALABAMA**
**JOHNNY A HOWARD v. VERIZON WIRELESS SERVICES LLC ET AL**

TRANSUNION, LLC, CO PRENTICE-HALL CORP SYS 150 S. PERRY STREET, MONTGOMERY AL, 36104

**NOTICE TO**

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JOHN WATTS

WHOSE ADDRESS IS P.O. Box 531168, BIRMINGHAM AL, 35253

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of   JOHNNY A HOWARD
pursuant to the Alabama Rules of the Civil Procedure

| 4/5/2008 1:58:30 PM | /s ANNE-MARIE ADAMS | |
| --- | --- | --- |
| Date | Clerk/Register | By |

| ☑ Certified mail is hereby requested | /s JOHN WATTS |
| --- | --- |
| | Plaintiff's/Attorney's Signature |

**RETURN ON SERVICE:**

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____        _____
Date                                          Server's Signature

**01-CV-2008-901075.00**
JOHNNY A HOWARD v. VERIZON WIRELESS SERVICES LLC ET AL

| C001 - JOHNNY A HOWARD | v. | D002 - TRANSUNION, LLC |
| --- | --- | --- |
| **Plaintiff** | | **Defendant** |


01-CV-2008-901075.00 D002

**SERVICE RETURN COPY**

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>01-CV-2008-901075.00 |
|---|---|---|

### IN THE CIVIL COURT OF JEFFERSON, ALABAMA
### JOHNNY A HOWARD v. VERIZON WIRELESS SERVICES LLC ET AL

TRANSUNION, LLC. CO PRENTICE-HALL CORP SYS 150 S. PERRY STREET, MONTGOMERY AL, 36104

**NOTICE TO** _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JOHN WATTS

WHOSE ADDRESS IS P.O. Box 531168, BIRMINGHAM AL, 35253

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of  JOHNNY A HOWARD
pursuant to the Alabama Rules of the Civil Procedure

| 4/5/2008 1:58:30 PM | /s ANNE-MARIE ADAMS | |
|---|---|---|
| Date | Clerk/Register | By |

☑ Certified mail is hereby requested     /s JOHN WATTS
Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____          _____
Date                             Server's Signature



$ 07.30°

MAILED FROM ZIP CODE 35203



CERTIFIED MAIL™

7007 3020 0000 7607 0865

Anne Marie Adams, Clerk
716 No Richard Arrington Jr Blvd
Room 400 JeffCo Courthouse
Birmingham AL 35203

Transunion LLC
%Prentice-Hall Corp Sys
150 S Perry Street
Montgomery AL 36104



**AlaFile E-Notice**

01-CV-2008-901075.00

To:  TRANSUNION, LLC
     CO PRENTICE-HALL CORP SYS
     150 S. PERRY STREET
     MONTGOMERY, AL 36104

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

JOHNNY A HOWARD v. VERIZON WIRELESS SERVICES LLC ET AL
01-CV-2008-901075.00

The following complaint was FILED on 4/5/2008 1:58:30 PM

Notice Date:      4/5/2008 1:58:30 PM

**ANNE-MARIE ADAMS**
**CIRCUIT COURT CLERK**
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



ELECTRONICALLY FILED
4/5/2008 1:58 PM
CV-2008-901075.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| JOHNNY A. HOWARD, an individual, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Civil Action Number: ) |
| VERIZON WIRELESS SERVICES, LLC, a Corporation; TRANSUNION, LLC, a Corporation; | ) ) ) ) ) |
| Defendants. | ) ) |

### PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS
### TO DEFENDANT VERIZON WIRELESS SERVICES, LLC ONLY

Comes now the Plaintiff and pursuant to Rule 36 of the Alabama Rules of Civil Procedure, Plaintiff requests that Defendant VERIZON WIRELESS SERVICES, LLC (hereinafter "Verizon") admit or deny the truth of the following:

1.  Plaintiff never had an account with you.

2.  You have never sent a bill to Plaintiff for this account.

3.  Plaintiff never signed an application or requested cell phone service from you.

4.  On multiple occasions you reported to Trans Union, Equifax, and Experian that Plaintiff was the responsible person for this account and that Plaintiff had defaulted on this account.

5.  You were informed by Trans Union that Plaintiff disputed this account.

6.  You were informed by Equifax that Plaintiff disputed this account.

7.  When receiving a dispute where the consumer claims the account is not his or hers, part of your policy and procedure in your investigation process is to review any police reports you have from the consumer.

8.  When receiving a dispute where the consumer claims the account is not his or hers, part of your policy and procedure in your investigation process is to review any applications of the consumer.

9.  When receiving a dispute where the consumer claims the account is not his or hers, part of your policy and procedure in your investigation process is to contact the consumer to investigate the dispute.

10. You followed all policies and procedures for investigating this account when you received notice that Plaintiff disputed this account.

11. After your investigation was completed, and on or before September 15, 2006, you told Trans Union that Plaintiff was responsible for this account.

12. After your investigation was completed, and on or before September 21, 2006, you told Equifax that Plaintiff was not responsible for this account.

13. You never contacted the Plaintiff to request any additional information for use in your investigation of his disputes regarding this account.

14. You never contacted any person outside your company in the course of your investigation of Plaintiff's disputes regarding this account.

15. You never sent any written or electronic correspondence with Trans Union or Equifax other than a CDV or ACDV form.

16. As part of their job duties, the employees who participated in investigating Plaintiff's disputes were required to perform a certain number of investigations of consumer disputes per hour.

17.    As part of their job duties, the employees who participated in investigating Plaintiff's disputes were evaluated on the number of investigations of consumer disputes they handled.

18.    You spent less than five minutes investigating the dispute after being informed of it by Trans Union.

19.    You spent less than five minutes investigating the dispute after being informed of it by Equifax.

20.    You intended that other persons or entities would see the information that you had reported on this account if such other persons or entities reviewed Plaintiff's credit reports from Trans Union, Equifax, and/or Experian.

21.    The information you reported about the Plaintiff is adverse credit information that negatively reflects upon Plaintiff's credit history.

22.    When you are reviewing credit applications, a credit report that indicates a charged off account of over $1,000.00 is viewed negatively by you.

23.    You agree that the information you provided to Trans Union about Plaintiff from the time of first being notified of a dispute up until receiving notice of this lawsuit was incorrect.

24.    It was only after the lawsuit was filed and you were served that you told Trans Union to delete the account from Plaintiff's credit reports.

25.    It was only after the lawsuit was filed and you were served that you told Experian to delete the account from Plaintiff's credit reports

Respectfully Submitted,

/s/ John G. Watts
**John G. Watts**
**Attorney for Plaintiff**

**OF COUNSEL:**
Watts Law Group, P.C.
700 29th Street South
Suite 201
Birmingham, AL 35233
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattslawgroup.com

/s/ M. Stan Herring
**M. Stan Herring**
**Attorney for Plaintiff**

**OF COUNSEL:**
M. Stan Herring, P.C.
700 29th Street South
Suite 201
Birmingham, AL 35233
(205) 714-4443
(888) 522-7167 *facsimile*
msh@mstanherringlaw.com

**PLEASE SERVE WITH THE SUMMONS AND COMPLAINT**



ELECTRONICALLY FILED
4/5/2008 1:58 PM
CV-2008-901075.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| JOHNNY A. HOWARD, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: |
| | ) | |
| VERIZON WIRELESS SERVICES, LLC, a Corporation; TRANSUNION, LLC, a Corporation; | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT VERIZON WIRELESS SERVICES, LLC

PLEASE TAKE NOTICE that you are hereby notified and required to respond to the following Interrogatories propounded by Plaintiff herein, through his attorneys of record, M. Stan Herring and John G. Watts within the time allowed by Rule 33, et seq., of the Alabama Rules of Civil Procedure.

You are further placed on notice that these Interrogatories are deemed continuing, requiring supplemental responses thereto in the event requested information becomes available which would require amendment or supplementation of your responses in order that they would be proper and truthful.

### INSTRUCTIONS

In answering these Interrogatories, please furnish all information which is available to you, including, without limitation, all information in the possession of your attorneys, accountants, affiliates, auditors, agents, employees, officers, directors, shareholders, contractors, or other personnel, and not merely such information as is in your possession.

If you cannot respond to any of the following Interrogatories in full, after exercising due diligence to secure information to do so, please so state, and respond to the extent possible, specifying all reasons why you are unable or unwilling to respond to the remainder, stating whatever information you have concerning the unproduced information, and what efforts you made to secure information sufficient to allow you to respond fully to the particular Interrogatory.

Although one or more of the following Interrogatories may not appear to be applicable to or directed to you, please respond to each and every one of them to the

extent that you are able to provide any response thereto whether such response consists of information within your own knowledge or what you have obtained from others. However, for every response in which you include information received from others, please provide the name, any known address, and any known phone number of the person from whom you so received such information. And, in every such instance please state that you cannot verify such of your own personal knowledge, identifying particularly the information for which you cannot vouch. Further, these Interrogatories contain words or phrases which require you to refer to the "Definitions" section of this document provided herein below.

Unless otherwise stated, each Interrogatory pertains to the time period beginning January, 2002, through the present date. Thus, your responses should be fully answered as they pertain to information within that time frame. Further, each Interrogatory should identify the appropriate time frame, if your response requires same.

## DEFINITIONS

1. "You" includes VERIZON WIRELESS SERVICES, LLC, the company, entity, institution, agency, subsidiary(ies), parent corporation(s) and/or any of its branches, departments, employees, agents, contractual affiliates, or otherwise connected by legal relationship, in the broadest sense: "You" includes any of your sister companies or related entities, and their connected companies, whether or not separately incorporated.

2. "Document(s)" shall mean and include any printed, typewritten, handwritten or otherwise recorded matter of whatever character, including specifically, but not exclusively, and without limiting the generality of the foregoing, letters, diaries, desk and other calendars, memoranda, telegrams, posters, cables, reports, charts, statistics, envelopes, studies, newspapers, news reports, business records, book of account(s) or other books, ledgers, balance sheets, journals, personal records, personal notes, any piece of paper, parchment, or other materials similarly used with anything written, typed, printed, stamped, engraved, embossed, or impressed upon it, accountants statements, accounting records of any kind, bank statements, minutes of meetings or other minutes, labels, graphics, notes of meetings or conversations or other notes, catalogues, written agreements, checks, announcements, statements, receipts, returns invoices, bills, warranties, advertisements, guarantees, summaries, pamphlets, prospectuses, bulletins, magazines, publications, photographs, work-sheets, computer printouts, telex transmissions or receipts, teletypes, telefaxes, file folders or other folders, tape recordings, and any original or non-identical (whether different from the original by reason of any notation made on such copies or otherwise), carbon, photostatic or photograph copies of such materials. The term "documents" shall also mean and include every other recording of, or means of recording on any tangible form, any form of information, data, communication, or representation, including but not limited to, microfilm, microfiche, any records stored on any form of computer software, audio or video tapes or discs, digitally recorded disks or diskettes, or any other medium whatsoever.

For each "document" responsive to any request withheld from production by you on the ground of any privilege, please state:

(a)     The nature of the document (e.g., letter, memorandum, contract, etc.);
(b)     The author or sender of the document;
(c)     The recipient of the document;
(d)     The date the document was authored, sent, and/or received; and
(e)     The reason such document is allegedly privileged.

3.   "Audit Trail" means a complete, detailed listing of each and every alteration, deletion, inquiry into, modification or other change to the credit report or profile as maintained in recorded form, in the broadest sense, by "you." The listing should include the identity, address, employer and title of the person(s) taking the action, the identity, address, employer and title of the person(s) authorizing the action, a detailed explanation of the action taken, the date of the action, the means used to effect such action, the location of origin of the action and the reason the action was taken. The term "audit trail" also includes the definition provided for the phrase in the Federbush, Federal Trade Commission and Formal Staff Opinion Letter, March 10, 1983.

4.   "Data" means the physical symbols in the broadest sense that represent information, regardless of whether the information is oral, written or otherwise recorded.

5.   "Data field" means any single or group of character(s), number(s), symbol(s) or other identifiable mark(s) maintained in a permanent or temporary recording which represent, in any way, an item or collection of information. "Data field" includes all types of data whether maintained in integer, real, character or boolean format.

6.   "Database" or "databank" means any grouping or collection of data field(s) maintained, in any format or order, in any permanent or temporary recorded form.

7.   "Hardware" means the physical components of a computer or any device capable of maintaining recorded data.

8.   "Software" means the entire set of computer programs, procedures, documentation, or other recorded instructions which guide a mechanical device or human in the operation of the computer or mechanical device.

9.   "Computer" means any and all programmable electronic devices or apparatuses, including hardware, software, and other databanks, that can store, retrieve, access, update, combine, rearrange, print, read, process or otherwise alter data whether such data are maintained in that device or at some other location. The term "computer" includes any and all magnetic recordings or systems, systems operating on or maintaining data in digital, analog, or hybrid format, or other mechanical devices, or other devices capable of maintaining writings or recordings, of any kind, in condensed format, and includes any disk, tape, recording, or other informational source, regardless of its physical dimension or size.

10.   "Format" means the general makeup or general plan of organization or arrangement of data.

11. "Identify" means that you should state:

(a)     any and all names, legal, trade or assumed;
(b)     all addresses used;
(c)     all telephone and fax numbers used; and, if applicable:
(d)     brand, make, manufacturer's name, address, phone number and the manufacturer's relationship to any and all Defendants in the above captioned action; and
(e)     employer's name, address, phone number and the employer's relationship to any and all Defendants in the above captioned action.

12.   "Person(s)" means any human being, sole proprietorship, limited partnership, partnership, association, group of human beings, other legal or de facto entity, or corporation, of whatever kind.

13.   "Credit worthiness" means any item of information which, in any way, represents or bears upon the credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living of a person.

14.   "Credit issuer" means any person who extends, purchases or takes assignments of credit to any consumer(s), as the whole or part of their business, regardless of the nature of the arrangement between the consumer and the person issuing credit.

15.   "Explain" means to elucidate, make plain or understandable, to give the reason for or cause of, and to show the logical development or relationships thereof.

16.   "Describe" means to represent or give an account of in words.

17.   "Security Assessment" means any method of determining the effectiveness of security or continuity measures in dealing with security-related or continuity-related risks.

18.   "Security-related" means maintaining the integrity of and controlling access to data.

19.   "Continuity-related" means preventing, mitigating and recovering from disruption of computer operation.

20.   "Information Security Programs" are those programs, computer-based or otherwise, which support your overall goals while enabling only authorized users to use your computer [system] and enabling the computer processes to function as designed.

21. "User" means any person or computer which interacts with a different computer.

22. "Access Programs" means those programs, physical or computer-based, which insure authorization, identification, verification, access control, accountability and security audit of your consumer credit database.

23. "Information Protection Architecture" means a statement of the overall design and operating objectives for the security, continuity and control of your consumer credit database.

24. "Consumer Credit Database" is intended to mean your entire Equifax consumer credit network, including but not limited to text file mode, file purge, file reorganization mode, all operator preamble, identification and password modes, and all other single or overlaying programs, applications and/or systems, and does include, but is not limited to, the main operating system.

25. "Personal Identifiers" means a person's name or social security number or other unique data which identifies or is associated with a particular "person."

26. "Credit scoring" refers to numerical assessments, provided by you or any other consumer reporting agency to a subscriber, designed to grade the specific consumer and calculate the risk of granting credit. This term includes all forms of scoring including, but not limited to, application scoring, behavior scoring and credit bureau scoring.

27. "Application scoring" refers to your programs designed to evaluate information on a consumer's application and the consumer's existing credit bureau report, as found on your database, using certain characteristics in predicting repayment.

28. "Behavior scoring" refers to your program designed to assess the credit risk of current customers of your subscriber. The assessment results from an analysis of the targeted consumer's purchase and payment history with your subscriber.

29. "Credit Bureau scoring" refers to your programs to assess the credit risk of a targeted consumer based upon a comparison of that consumer's credit report data with the data from credit reports of other consumers on your consumer credit database using your predetermined characteristics and algorithm to predict future payment behavior of the targeted consumer.

30. "Plaintiff" refers to Johnny A. Howard.

31. "Other Defendant" means any Defendant(s) in the above entitled and captioned.

32.  "Block" means a group of words, characters or digits that are held in one section of an input/output medium and handled as a unit; e.g., the data recorded on a punched card, or the data recorded between two interblock gaps on a magnetic tape.

33.  "Blocking" means combining two or more records into one block usually to increase the efficiency of computer input and output operations.

34.  "Block Size" is the number of records per block multiplied by the record size.

35.  "CAFE" means the system of programs that processes your customer tapes.

36.  "Byte" means a group of adjacent bits operated on as a single unit and usually shorter than a word.

37.  "Program" means the following: (1) a plan for solving a problem; (2) to devise a plan for solving a problem; (3) a computer routine (i.e., a set of instructions arranged in proper sequence to cause a computer to perform a particular process); (4) to write a computer routine.

38.  "Header record" means a machine readable record at the beginning of a file containing data identifying the file and data used in file control.

## INTERROGATORIES

### INTERROGATORY 1:

Please state the full name, address, job title, occupation and name and address of the present employer of each person answering or assisting in answering these interrogatories on your behalf.

### ANSWER:

### INTERROGATORY 2:

Did you receive any CDV [Consumer Dispute Verification] and ACDV [CDV response] and UDF [Universal Data Form] or similar notice of a consumer dispute from Equifax, Experian, and/or TransUnion regarding the Plaintiff and/or his claims involved in this suit? If so, please state, explain and describe the contents of each and every one you received, sent or possessed, at any time, which bore any of Plaintiff's personal identifiers.

### ANSWER:

**INTERROGATORY 3:**

Please state whether you authorized Trans Union, Experian, and/or Equifax [collectively "their"] to report your consumer credit data on and by way of any or all of their credit reporting systems during the years, 2002, 2003, 2004, 2005, 2006, 2007, and/or 2008. If so, state whether you authorized Trans Union, Experian, and/or Equifax [collectively "their"] to report your data about Plaintiff on and by way of any or all of their credit reporting systems during the years, 2002, 2003, 2004, 2005, 2006, 2007, and/or 2008.

**ANSWER:**

**INTERROGATORY 4:**

Please state the dates and exact contents of each reporting, which bore any of Plaintiff's personal identifiers, you made to any consumer reporting agency[ies].

**ANSWER:**

**INTERROGATORY 5:**

Identify all suits filed against you since 2002 alleging violations of the Fair Credit Reporting Act.

**ANSWER:**

**INTERROGATORY NO. 6:**

Identify the names, addresses, and telephone numbers of all persons who were witness to or who have personal knowledge of any of the facts, events, or matters that are alleged in Plaintiffs' complaint, your answer, anticipated answer and/or defenses thereto and describe and explain your understanding of the matters on which the persons named have knowledge. In addition to identifying said individuals as specified in the instructions above, please include the following:

    (a)    Please state whether each such person is affiliated with, or related to, or employed by any party (or its agents, servants, officers, or employees) to this lawsuit;

    (b)    If any of the persons so listed in response to this interrogatory do not fit the characterization in subpart (a) above, please describe the nature of their involvement in this lawsuit;

    (c)     Please explain and describe your understanding of their knowledge of such facts.

**ANSWER:**

**INTERROGATORY NO. 7:**

State all of the facts and describe all actions you took, including not limited to correspondence and communications with any consumer reporting agency, furnisher, creditor or potential creditor, with regard to or which in any way references the Plaintiff and/or any of his accounts.

**ANSWER:**

**INTERROGATORY NO. 8:**

If any document that is or would have been responsive to Plaintiff's Requests for Production of Documents to you was destroyed, lost, mislaid, or otherwise missing, identify the document, state the date of and reason for its unavailability, and identify all persons having knowledge of its contents and/or the reason for its unavailability.

**ANSWER:**

**INTERROGATORY NO. 9:**

If any document responsive to Plaintiff's Request for Production of Documents to you is withheld from production, identify each such document by date, title, subject matter, length and the request to which it is potentially responsive and state the reason for withholding production, and identify each person to whom the document was sent, shown, or made accessible, or to whom it was explained.

**ANSWER:**

**INTERROGATORY NO. 10:**

State whether you have reported data to any consumer reporting agency concerning the Plaintiff's consumer reports which is inaccurate and, if so, state why such inaccurate information was placed on his consumer report(s), state the date(s) such report(s) was (were) issued, to whom the report(s) was (were) issued, and state what you could and should have done to prevent the inaccurate data from being reported on his/her/their consumer report(s).

**ANSWER:**

**INTERROGATORY NO. 11:**

State your procedures (and identify all documents related thereto) designed to assure the proper investigation or reinvestigation of disputed consumer data and the overall accuracy of the information in your consumer credit database and consumer reports you issued.

**ANSWER:**

**INTERROGATORY NO. 12:**

For each dispute of any type from Plaintiff, whether received from a consumer reporting agency or directly from the Plaintiff, or concerning any account of Plaintiff, please describe the process of the investigation and the result of the investigation as set forth below:

    (a)    List the date of each such dispute;

    (b)    Describe the policy and procedure for investigating the dispute including what documents are to be consulted or reviewed; what documents are to be generated; and the identities or description of who is to be involved in any manner with making the decisions;

    (c)    For each dispute (listing the date) describe in detail whether the above described policy and procedure for investigating the dispute was followed; what documents were consulted or reviewed; what documents were generated; the identities of all persons involved in any manner with processing or handling the dispute and/or making the decision on the investigation; and the result of the investigation.

**ANSWER:**

**INTERROGATORY NO. 13:**

Please list, explain and describe documents known to you or believed by you to exist concerning any of the events described in Plaintiff's complaint or concerning any of the events which are the subject[s] of any defense[s] you have raised to this lawsuit.

**ANSWER:**

**INTERROGATORY NO. 14:**

Please list, explain and describe each and every contact or communication you received from your co-defendant and Equifax and Experian which, in any way, referenced Plaintiff. This request would include any GEIS [General Electric Information Services]-based and E-Oscar communications, UDFs, AUDFs, CDVs, ACDVs, tape transfers, system to system transfers, phone calls and other means of communication.

**ANSWER:**

**INTERROGATORY NO. 15:**

Please state whether you have reported any accounts of or related to the Plaintiff and, in connection with your response, please identify the recipients of such reports, the manner reported, the identifying data connected with the report, and explain and describe the manner and identifiers under which you received the information.

**ANSWER:**

**INTERROGATORY NO. 16:**

Please state whether Plaintiff ever told you or any collection agency of yours the account was not his and if he did fully identify all persons with knowledge of this, what your policy and procedures were at the time and continuing thru to the present day and all actions taken by you in response to Plaintiff telling you this was not his account.

**ANSWER:**

Respectfully submitted this the **5th** Day of **April**, 2008.

Respectfully Submitted,

/s/ John G. Watts
**John G. Watts**
**Attorney for Plaintiff**

**OF COUNSEL:**
Watts Law Group, P.C.
700 29th Street South
Suite 201
Birmingham, AL 35233
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattslawgroup.com

/s/ M. Stan Herring
**M. Stan Herring**
**Attorney for Plaintiff**

**OF COUNSEL:**
M. Stan Herring, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 714-4443
(888) 522-7167 *facsimile*
msh@mstanherringlaw.com

**PLEASE SERVE WITH THE SUMMONS AND COMPLAINT**



ELECTRONICALLY FILED
4/5/2008 1:58 PM
CV-2008-901075:00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| JOHNNY A. HOWARD, an individual, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action Number: |
| | ) |
| VERIZON WIRELESS SERVICES, LLC, a Corporation; TRANSUNION, LLC, a Corporation; | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES
### TO DEFENDANT TRANSUNION

PLEASE TAKE NOTICE that you are hereby notified and required to respond to the following Interrogatories propounded by Plaintiff herein, through his attorneys of record, M. Stan Herring and John G. Watts in accordance with the provisions of Rule 33, et seq., of the Alabama Rules of Civil Procedure.

You are further placed on notice that these Interrogatories are deemed continuing, requiring supplemental responses thereto in the event requested information becomes available which would require amendment or supplementation of your responses in order that they would be proper and truthful.

### INSTRUCTIONS

In answering these Interrogatories, please furnish all information which is available to you, including, without limitation, all information in the possession of your attorneys, accountants, affiliates, auditors, agents, employees, officers, directors, shareholders, contractors, or other personnel, and not merely such information as is in your possession.

If you cannot respond to any of the following Interrogatories in full, after exercising due diligence to secure information to do so, please so state, and respond to the extent possible, specifying all reasons why you are unable or unwilling to respond to the remainder, stating whatever information you have concerning the unproduced information, and what efforts you made to secure information sufficient to allow you to respond fully to the particular Interrogatory.

Although one or more of the following Interrogatories may not appear to be applicable to or directed to you, please respond to each and every one of them to the

extent that you are able to provide any response thereto whether such response consists of information within your own knowledge or what you have obtained from others. However, for every response in which you include information received from others, please provide the name, any known address, and any known phone number of the person from whom you so received such information. And, in every such instance please state that you cannot verify such of your own personal knowledge, identifying particularly the information for which you cannot vouch. Further, these Interrogatories contain words or phrases which require you to refer to the "Definitions" section of this document provided herein below.

Unless otherwise stated, each Interrogatory pertains to the time period beginning January, 2002, through the present date. Thus, your responses should be fully answered as they pertain to information within that time frame. Further, each Interrogatory should identify the appropriate time frame, if your response requires same.

## DEFINITIONS

1.    "You" includes TRANSUNION, LLC, the company, entity, institution, agency, subsidiary(ies), parent corporation(s) and/or any of its branches, departments, employees, agents, contractual affiliates, or otherwise connected by legal relationship, in the broadest sense. "You" includes any of your sister companies or related entities, including, for example, "CSC Credit Services, Inc.," "CBI," and their connected companies, whether or not separately incorporated. You may also be referenced herein simply as "TransUnion."

2.    "Document(s)" shall mean and include any printed, typewritten, handwritten or otherwise recorded matter of whatever character, including specifically, but not exclusively, and without limiting the generality of the foregoing, letters, diaries, desk and other calendars, memoranda, telegrams, posters, cables, reports, charts, statistics, envelopes, studies, newspapers, news reports, business records, book of account(s) or other books, ledgers, balance sheets, journals, personal records, personal notes, any piece of paper, parchment, or other materials similarly used with anything written, typed, printed, stamped, engraved, embossed, or impressed upon it, accountants statements, accounting records of any kind, bank statements, minutes of meetings or other minutes, labels, graphics, notes of meetings or conversations or other notes, catalogues, written agreements, checks, announcements, statements, receipts, returns invoices, bills, warranties, advertisements, guarantees, summaries, pamphlets, prospectuses, bulletins, magazines, publications, photographs, work-sheets, computer printouts, telex transmissions or receipts, teletypes, telefaxes, file folders or other folders, tape recordings, and any original or non-identical (whether different from the original by reason of any notation made on such copies or otherwise), carbon, photostatic or photograph copies of such materials. The term "documents" shall also mean and include every other recording of, or means of recording on any tangible form, any form of information, data, communication, or representation, including but not limited to, microfilm, microfiche, any records stored on any form of computer software, audio or

video tapes or discs, digitally recorded disks or diskettes, or any other medium whatsoever.

For each "document" responsive to any request withheld from production by you on the ground of any privilege, please state:

(a)    The nature of the document (e.g., letter, memorandum, contract, etc.);
(b)    The author or sender of the document;
(c)    The recipient of the document;
(d)    The date the document was authored, sent, and/or received; and
(e)    The reason such document is allegedly privileged.

3. "Audit Trail" means a complete, detailed listing of each and every alteration, deletion, inquiry into, modification or other change to the credit report or profile as maintained in recorded form, in the broadest sense, by "you." The listing should include the identity, address, employer and title of the person(s) taking the action, the identity, address, employer and title of the person(s) authorizing the action, a detailed explanation of the action taken, the date of the action, the means used to effect such action, the location of origin of the action and the reason the action was taken. The term "audit trail" also includes the definition provided for the phrase in the Federbush, Federal Trade Commission and Formal Staff Opinion Letter, March 10, 1983.

4.    "Data" means the physical symbols in the broadest sense that represent information, regardless of whether the information is oral, written or otherwise recorded.

5.    "Data field" means any single or group of character(s), number(s), symbol(s) or other identifiable mark(s) maintained in a permanent or temporary recording which represent, in any way, an item or collection of information. "Data field" includes all types of data whether maintained in integer, real, character or boolean format.

6.    "Database" or "databank" means any grouping or collection of data field(s) maintained, in any format or order, in any permanent or temporary recorded form.

7.    "Hardware" means the physical components of a computer or any device capable of maintaining recorded data.

8.    "Software" means the entire set of computer programs, procedures, documentation, or other recorded instructions which guide a mechanical device or human in the operation of the computer or mechanical device.

9.    "Computer" means any and all programmable electronic devices or apparatuses, including hardware, software, and other databanks, that can store, retrieve, access, update, combine, rearrange, print, read, process or otherwise alter data whether such data are maintained in that device or at some other location. The term "computer" includes any and all magnetic recordings or systems, systems operating on or maintaining data in digital, analog, or hybrid format, or other mechanical devices, or other devices

capable of maintaining writings or recordings, of any kind, in condensed format, and includes any disk, tape, recording, or other informational source, regardless of its physical dimension or size.

10.  "Format" means the general makeup or general plan of organization or arrangement of data.

11. "Identify" means that you should state:

(a)     any and all names, legal, trade or assumed;
(b)     all addresses used;
(c)     all telephone and fax numbers used; and, if applicable:
(d)     brand, make, manufacturer's name, address, phone number and the manufacturer's relationship to any and all Defendants in the above captioned action; and
(e)     employer's name, address, phone number and the employer's relationship to any and all Defendants in the above captioned action.

12.  "Person(s)" means any human being, sole proprietorship, limited partnership, partnership, association, group of human beings, other legal or de facto entity, or corporation, of whatever kind.

13.  "Credit worthiness" means any item of information which, in any way, represents or bears upon the credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living of a person.

14.  "Credit issuer" means any person who extends, purchases or takes assignments of credit to any consumer(s), as the whole or part of their business, regardless of the nature of the arrangement between the consumer and the person issuing credit.

15.  "Explain" means to elucidate, make plain or understandable, to give the reason for or cause of, and to show the logical development or relationships thereof.

16.  "Describe" means to represent or give an account of in words.

17.  "Security Assessment" means any method of determining the effectiveness of security or continuity measures in dealing with security-related or continuity-related risks.

18.  "Security-related" means maintaining the integrity of and controlling access to data.

19.  "Continuity-related" means preventing, mitigating and recovering from disruption of computer operation.

20. "Information Security Programs" are those programs, computer-based or otherwise, which support your overall goals while enabling only authorized users to use your computer [system] and enabling the computer processes to function as designed.

21. "User" means any person or computer which interacts with a different computer.

22. "Access Programs" means those programs, physical or computer-based, which insure authorization, identification, verification, access control, accountability and security audit of your consumer credit database.

23. "Information Protection Architecture" means a statement of the overall design and operating objectives for the security, continuity and control of your consumer credit database.

24. "Consumer Credit Database" is intended to mean your entire Equifax consumer credit network, including but not limited to text file mode, file purge, file reorganization mode, all operator preamble, identification and password modes, and all other single or overlaying programs, applications and/or systems, and does include, but is not limited to, the main operating system.

25. "Personal Identifiers" means a person's name or social security number or other unique data which identifies or is associated with a particular "person."

26. "Credit scoring" refers to numerical assessments, provided by you or any other consumer reporting agency to a subscriber, designed to grade the specific consumer and calculate the risk of granting credit. This term includes all forms of scoring including, but not limited to, application scoring, behavior scoring and credit bureau scoring.

27. "Application scoring" refers to your programs designed to evaluate information on a consumer's application and the consumer's existing credit bureau report, as found on your database, using certain characteristics in predicting repayment.

28. "Behavior scoring" refers to your program designed to assess the credit risk of current customers of your subscriber. The assessment results from an analysis of the targeted consumer's purchase and payment history with your subscriber.

29. "Credit Bureau scoring" refers to your programs to assess the credit risk of a targeted consumer based upon a comparison of that consumer's credit report data with the data from credit reports of other consumers on your consumer credit database using your predetermined characteristics and algorithm to predict future payment behavior of the targeted consumer.

30. "Plaintiffs' Disclosure Documents, Bates Stamped" refers to a full set of Bates stamped, non-privileged documents voluntarily produced for inspection to all opposing counsels of record in this action by counsel for Plaintiffs.

31. "Plaintiff" refers to Johnny A. Howard.

32. "Other Defendant" means any Defendant(s) in the above entitled and captioned.

33. "Block" means a group of words, characters or digits that are held in one section of an input/output medium and handled as a unit; e.g., the data recorded on a punched card, or the data recorded between two interblock gaps on a magnetic tape.

34. "Blocking" means combining two or more records into one block usually to increase the efficiency of computer input and output operations.

35. "Block Size" is the number of records per block multiplied by the record size.

36. "CAFE" means the system of programs that processes your customer tapes.

37. "Byte" means a group of adjacent bits operated on as a single unit and usually shorter than a word.

38. "Program" means the following: (1) a plan for solving a problem; (2) to devise a plan for solving a problem; (3) a computer routine (i.e., a set of instructions arranged in proper sequence to cause a computer to perform a particular process); (4) to write a computer routine.

39. "Header record" means a machine readable record at the beginning of a file containing data identifying the file and data used in file control.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify the names, addresses, and telephone numbers of all persons who were witness to or who have personal knowledge of any of the facts, events, or matters that are alleged in Plaintiffs' complaint, your answer, anticipated answer and/or defenses thereto and describe and explain your understanding of the matters on which the persons named have knowledge. In addition to identifying said individuals as specified in the instructions above, please include the following:

      (a)      Please state whether each such person is affiliated with, or related to, or employed by any party (or its agents, servants, officers, or employees) to this lawsuit;

    (b)    If any of the persons so listed in response to this interrogatory do not fit the characterization in subpart (a) above, please describe the nature of their involvement in this lawsuit;

    (c)    Please explain and describe your understanding of their knowledge of such facts.

**ANSWER:**

**INTERROGATORY NO. 2:**

Identify all correspondence or documents that refer or relate to any correspondence or communication between you and any other defendant in this action, as well as the Plaintiff, as well as any potential credit grantors or mortgage grantors relating or referring to the Plaintiff, facts, acts, events, or matters alleged in Plaintiffs' complaint, or your answer, anticipated answer and/or defenses thereto.

**ANSWER:**

**INTERROGATORY NO. 3:**

Please state whether you have reported any accounts of or related to the Plaintiff and, in connection with your response, please identify the recipients of such reports, the manner reported, the identifying data connected with the report, and explain and describe the manner and identifiers under which you received the information.

**ANSWER:**

**INTERROGATORY NO. 4:**

State all of the facts and describe all actions you took, including not limited to correspondence and communications with any consumer reporting agency, furnisher, creditor or potential creditor, with regard to or which in any way references the Plaintiff and/or any of the accounts of the Plaintiff.

**ANSWER:**

**INTERROGATORY NO. 5:**

State your policies and procedures and identify the name or title of said policy and procedure as well as any and all manuals, reference books, of memorandums by whatever

name called, designed to assure the maximum possible accuracy of the information in your consumer credit database and consumer reports you issued. Please also state your policies and procedures and identify the name or title of said policy and procedure as well as any and all manuals, reference books, of memorandums by whatever name called, designed to assure you conduct a reasonable and proper reinvestigation of any disputed accounts.

**ANSWER:**


**INTERROGATORY NO. 6:**

If any document that is or would have been responsive to Plaintiff's Requests for Production of Documents to you was destroyed, lost, mislaid, or otherwise missing, identify the document, state the date of and reason for its destruction, and identify all persons having knowledge of its contents and/or the reason for its destruction.

**ANSWER:**


**INTERROGATORY NO. 7:**

If any document responsive to Plaintiff's Request for Production of Documents to you is withheld from production, identify each such document by date, title, subject matter, length and the request to which it is potentially responsive and state the reason for withholding production, and identify each person to whom the document was sent, shown, or made accessible, or to whom it was explained.

**ANSWER:**


**INTERROGATORY NO. 8:**

State whether you have reported data on the Plaintiff's consumer reports which is inaccurate and, if so, state why such inaccurate information was placed on his/her/their consumer report(s), state the date(s) such report(s) was (were) issued, to whom the report(s) was (were) issued, and state what you could and should have done to prevent the inaccurate data from being reported on his/her/their consumer report(s).

**ANSWER:**

**INTERROGATORY NO. 9:**

State your procedures (and identify all documents related thereto) designed to assure the proper investigation or reinvestigation of disputed consumer data and the overall accuracy of the information in your consumer credit database and consumer reports you issued.

**ANSWER:**

**INTERROGATORY NO. 10:**

For each dispute of any type from or related to the Plaintiff or concerning any account of Plaintiff, please describe the process of the investigation and the result of the investigation as set forth below:

    (a)    List the date of each such dispute;

    (b)    Describe the policy and procedure for investigating the dispute including what documents are to be consulted or reviewed; what documents are to be generated; and the identities or description of who is to be involved in any manner with making the decisions;

    (c)    For each dispute (listing the date) describe in detail whether the above described policy and procedure for investigating the dispute was followed; what documents were consulted or reviewed; what documents were generated; the identities of all persons involved in any manner with processing or handling the dispute and/or making the decision on the investigation; and the result of the investigation.

**ANSWER:**

**INTERROGATORY NO. 11:**

Please list, explain and describe documents known to you or believed by you to exist concerning any of the events described in Plaintiff's complaint or concerning any of the events which are the subject[s] of any defense[s] you have raised to this lawsuit.

**ANSWER:**

**INTERROGATORY NO. 12:**

Please list, explain and describe each and every contact or communication you received from your co-defendants which, in any way, referenced Plaintiff. This request would include any GEIS [General Electric Information Services]-based and E-Oscar communications, UDFs, AUDFs, CDVs, ACDVs, tape transfers, system to system transfers, phone calls and other means of communication.

**ANSWER:**

**INTERROGATORY NO. 13:**

Did you receive any police report related to Plaintiff? If so, what steps or actions did you take in response.

**ANSWER:**

Respectfully submitted this the **5th** Day of <u>April</u>, 2008.

Respectfully Submitted,

/s/ John G. Watts_____
**John G. Watts**
**Attorney for Plaintiff**

**OF COUNSEL:**
Watts Law Group, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattslawgroup.com

/s/ M. Stan Herring
**M. Stan Herring**
**Attorney for Plaintiff**

**OF COUNSEL:**
M. Stan Herring, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 714-4443
(888) 522-7167 *facsimile*
msh@mstanherringlaw.com

**PLEASE SERVE WITH THE SUMMONS AND COMPLAINT**



ELECTRONICALLY FILED
4/5/2008 1:58 PM
CV-2008-901075.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| JOHNNY A. HOWARD, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action Number: |
| VERIZON WIRELESS SERVICES, LLC, a Corporation; TRANSUNION, LLC, a Corporation; | ) ) ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS

PLEASE TAKE NOTICE that you are hereby notified and required to respond to the following Requests For Production of Documents to Plaintiff herein, through Plaintiff's attorney of record, within the provisions the Alabama Rules of Civil Procedure.

You are further placed on notice that this discovery is continuing, requiring supplemental responses thereto in the event requested information or documents become available which would require amendment or supplementation of your responses in order that they would be proper and truthful, become known to you.

### INSTRUCTIONS

**ALL INFORMATION.** In answering this discovery, please furnish all information and documents which are available to you, including, without limitation, all documents in the possession of your attorneys, accountants, affiliates, auditors, agents, employees, officers, directors, shareholders, contractors, or other personnel, and not merely such documents as is in your own personal possession.

**DUE DILIGENCE.** If you cannot respond to any of the following requests and interrogatories in full, after exercising due diligence to secure documents and information to do so, please so state, and respond to the extent possible, specifying all reasons why you are unable or unwilling to respond to the remainder, stating whatever documents you have concerning the unproduced documents and undisclosed information, and what efforts you made to secure documents and information sufficient to allow you to respond fully to the particular request or interrogatory.

**OBJECTIONS:** If an interrogatory or request is objected to, in whole or in part, or if information responsive to an interrogatory or request is withheld, on the ground of privilege or

otherwise, please set forth fully each objection, describe generally the information which is withheld, and set forth the facts upon which Defendant relies as the basis for each such objection.

**OBLIGATION TO SUPPLEMENT:** This discovery is of a continuing nature and supplementary answers are to be filed upon your discovery that an answer is incorrect or incomplete.

**TIME FRAME:** Unless otherwise stated, each request pertains to the time period beginning **January 1, 2002,** through the present date. Thus, your responses should be fully answered as they pertain to information, recordings or documents within that time frame. Further, each request should identify the appropriate time frame, if your response requires the same.

## DEFINITIONS

**"Document"** shall refer to any mechanism of preserving or transmitting any information, whether it be written, printed, photographed, electronically or magnetically recorded or otherwise made and maintained.

**"Identify"** or **"describe"** when referring to a person, a firm, a corporation, or another entity shall mean to state the full formal name; the address of the principal place of business or residence; and the telephone number,

**"Identify",** or **"describe"** when referring to a document shall mean giving a description of the title, the author, a description of the general subject matter and the identity and address of its present custodian.

**"Defendant(s),"** **"you"** means all agents, employees, representatives, investigators, and others who are in possession of or may have obtained information for or on behalf of the named party or parties defendant.

**"Personal Identifiers"** means a person's name or social security number or other unique data that identifies or is associated with a particular "person".

**"Plaintiff"** refers to Johnny A. Howard.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Please produce all documents involving communications between you and any of the other defendants, in which the communication in any way referenced Plaintiff and/or any of his personal identifiers.

**Response:**

2.      Please produce all documents involving or constituting communications between you and the Plaintiff or anyone acting on or purporting to act on the Plaintiff's behalf.

**Response:**

3.   Please produce your policy manuals, procedure manuals, or other documents, which address your policies, practices or procedures in reporting data to any consumer reporting agency, during each of the years: 2002, 2003, 2004, 2005, 2006, 2007, and 2008.

**Response:**

4.   Please produce your policy manuals, procedure manuals, or other documents, which address your policies, practices or procedures for altering previously reported data to any consumer reporting agency or any other entity, during each of the years: 2002, 2003, 2004, 2005, 2006, 2007, and 2008.

**Response:**

5.   Please produce your policy manuals, procedure manuals, or other documents, which address your policies, practices or procedures for retention, dissemination or disposal of account data, during each of the years: 2002, 2003, 2004, 2005, 2006, 2007, and 2008.

**Response:**

6.   Please produce your policy manuals, procedure manuals, or other documents, which reference, constitute or duplicate the Fair Credit Reporting Act (or any part thereof) and its revisions or amendments provided to your employees, during each of the years: 2002, 2003, 2004, 2005, 2006, 2007, and 2008.

**Response:**

7.   Please produce your policy manuals, procedure manuals, or other documents or video, which are provided to your employees or independent contractors concerning retention, alteration, correction, investigation, dissemination or disposal of data provided to any consumer reporting agency or any other entity or placed in any report during each of the years:  2002, 2003, 2004, 2005, 2006, 2007, and 2008.

**Response:**

8.   Please produce your contract, documents, manuals or other recorded data, concerning your subscriber relationships with the other defendants and with Experian and Equifax.

**Response:**

9.      Please produce your documents which evidence, constitute and/or address your policies, procedures and guidelines for handling Consumer Disputes, including but not limited GEIS [General Electric Information Services]-based and E-Oscar communications, UDFs, AUDFs, CDVs, ACDVs, tape transfers, system to system transfers, phone calls, and other means, by whatever named called, of communication to any other agency, entity, consumer reporting agency or furnisher, in each of following years: 2002, 2003, 2004, 2005, 2006, 2007, and 2008.

**Response:**

10.     Please produce all of your documents evidencing or including data concerning the names, addresses, telephone numbers, current employers and current whereabouts of each and every one of your employees who communicated with Plaintiff.

**Response:**

11.     Please provide a complete audit trail of any document(s), computer(s), or other data held by you which indicate, address or discuss modifying or amending any information regarding Plaintiff reported by you.

**Response:**

12.     Please produce all documents which constitute consumer dispute verification (CDV's), Universal Data correction forms, correspondence with any consumer reporting agency, data deletion forms, or any other documents which request an alteration and/or deletion of data you or any other defendant, individual or entity had reported about Plaintiff, which contained any one of Plaintiff's personal identifiers.

**Response:**

13.     Please produce your documents evidencing, referencing, constituting and/or containing your subscriber contracts, subscriber names, subscriber codes, personal identification numbers, reporting policies, means and procedures and/or access codes and specify what time periods such contracts, names, codes, personal identification numbers and/or access codes were used or made available to you by any party to this case.

**Response:**

14.   Please produce your documents which evidence, constitute and/or address your communications with Plaintiff or anyone acting on behalf of Plaintiff.

**<u>Response:</u>**

15.   Please produce your documents and/or correspondence in your, or your attorney's, possession that refer to or relate to any facts which you believe may have any bearing upon this lawsuit or any defenses you have raised in this lawsuit, excluding letters between you and your attorney.

**<u>Response:</u>**

16.   Please produce copies of your documents evidencing telephone messages, log books or other regularly maintained records by you which contain information about communications between you and Plaintiff and/or any other defendant in this action and/or any consumer reporting agency or collection agency or furnisher or government bureau or any Better Business Bureau which in any way relates to the account or Plaintiff.

**<u>Response:</u>**

17.   Please produce all documents which refer in any manner to the Plaintiff or any of his accounts.

**<u>Response:</u>**

18.   Please produce any and all documents identified, relied upon or referred to by you in your responses to Plaintiff's interrogatories.

**<u>Response:</u>**

19.   Please produce any and all documents related to the account in question.

**<u>Response:</u>**

Respectfully submitted this the <u>5th</u> Day of <u>April</u>, 2008.

Respectfully Submitted,

/s/ John G. Watts

**John G. Watts**
**Attorney for Plaintiff**

**OF COUNSEL:**
Watts Law Group, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattslawgroup.com

/s/ M. Stan Herring

**M. Stan Herring**
**Attorney for Plaintiff**

**OF COUNSEL:**
M. Stan Herring, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 714-4443
(888) 522-7167 *facsimile*
msh@mstanherringlaw.com

**PLEASE SERVE WITH THE SUMMONS AND COMPLAINT**



ELECTRONICALLY FILED
4/5/2008 1:58 PM
CV-2008-901075.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| JOHNNY A. HOWARD, an individual, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: |
| | ) | |
| VERIZON WIRELESS | ) | |
| SERVICES, LLC, a | ) | |
| Corporation; TRANSUNION, | ) | |
| LLC, a Corporation; | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE TO TAKE DEPOSITION OF 30(b)(6) CORPORATE REPRESENTATIVE OF VERIZON WIRELESS SERVICES, LLC

Take notice, that the Plaintiff will take the deposition of the following entities or individuals pursuant to Alabama Rules of Civil Procedure. The deponent(s) must bring all documents listed in this deposition notice and any attachments, and present the originals of these documents for inspection and copying at the deposition. The deposition will continue until completed.

**DEPONENT:**     Corporate Representative of Verizon Wireless Services, LLC

**DATE:**     June 12, 2008

**TIME:**     9:00 a.m.

**PLACE:**     Watts Law Group, P.C.
700 29th Street South, Ste 201
Birmingham, AL 35233

Please note that pursuant to Alabama Rules of Civil Procedure 30(b)(5) & (6), this corporate Defendant must designate an individual(s) to testify as to the following matters:

1.     All allegations of fact stated in the complaint in this lawsuit.

2.     All affirmative defenses asserted by the Defendant.

3.     Whether or not Defendant's credit reportings to the major credit reporting agencies relating to Plaintiff were accurate and verifiable.

4.     Whether or not Plaintiff owes or ever owed money to Defendant.

5.     The policies, procedures and practices put in place by the Defendant to insure that the investigations or reinvestigations initiated by Plaintiff would result in accurate credit reportings relating to Plaintiff.

6.     The definition of "accurate" and "verifiable" as those terms are used in Defendant's investigation or reinvestigation process.

7.     The nature and content of any records maintained by the Defendant-- including archived copies and recorded conversations--relating to the reinvestigation of any trade lines appearing on Plaintiff's credit report.

8.     The number of reinvestigations of credit disputes handled by the Defendant on an annual basis and economic resources attributable to those reinvestigations.

9.     The existence and content of any reports or documents assessing the accuracy or reliability of credit reporting submitted by Defendant including any reports to or by the credit reporting agencies regarding the accuracy and reliability of those reportings.

10.    Any quotas or productivity targets for the Defendant's reinvestigators of credit disputes.

11.    Amount paid to and training provided to the employees responsible for reinvestigating disputed credit reportings made by the Defendant.

12.    The documents and informational resources available to the Defendant's employees who are responsible for reinvestigating disputed credit reportings made by the Defendant.

13.    The budgetary allocation of resources of the Defendant to reinvestigations of credit reporting disputes.

14.    The existence, nature, and content of any training provided to Defendant's employees or agents conducting reinvestigations.

15.    The nature, purpose, and means by which requests for reinvestigation are received and by which response may be made.

16.    The identity, content, and number of computer systems used to maintain data on consumers, their accounts, collections or applications and the access given to each of those systems.

17.    Scope of Defendant's employees' authority to correct credit reporting errors.

18.    The existence and content of any policy or procedure for handling credit reporting reinvestigations.

19.    The documents which are regularly maintained by the Defendant relative to any investigation or reinvestigation or credit reporting, and the content of those documents relative to the Plaintiff.

20.    The identity of any known witnesses to the allegations of fact stated in the complaint or the affirmative defenses asserted by the Defendant.

21.    The authenticity of any documents identified in any of the disclosures, pleadings, or discovery responses.

22.    The identity and expert credentials of any of the Defendant's employees or witnesses who were involved with or handled Plaintiff's account and/or any investigation or reinvestigation relative to Plaintiff's accounts.

23.    Identity of any person participating in the opening, servicing or handling of the transaction underlying this lawsuit (i.e. the account) or events surrounding it.

24.    Any communications between the Defendant and the Plaintiff relating to the investigation or reinvestigation of any credit reporting relating to the Plaintiff.

25.    Any releases or waivers signed by the Plaintiff.

26.    Any insurance or bonding carried by the Defendant, which may provide coverage for the allegations in Plaintiff's complaint.

27.    Whether or not the Plaintiff is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq* ("FCRA") at § 1681a(c).

28.    The existence of, date of and receipt of any credit applications from the Plaintiff.

29.    Whether or not the Defendant regularly furnishes credit information to any credit reporting agencies.

30.    The manner in which the Defendant reports or otherwise furnishes credit information to credit reporting agencies.

31.    The procedures in place at the Defendant to insure that false or inaccurate information is not reported on any consumer's credit report or to any credit reporting agency.

32.    Whether or not the Defendant has reported credit information relating to any of Plaintiff's personal identifiers including but not limited to name, address and social security number.

33.    The time, place, manner, and content of any reporting of credit information relating to any of Plaintiff's personal identifiers including but not limited to name, address and social security number.

34.    The format of the Defendant's credit reportings [e.g.] Metro or Metro II format.

35.    The content of each available data field or segment reported relating to any of Plaintiff's personal identifiers including but not limited to name, address and social security number.

36.    The capability of the Defendant's computer to reproduce records of past credit reportings to consumer reporting agencies.

37.    The policy, practice, and procedure relating to incomplete reporting of the available data fields or segments reported to credit reporting agencies.

38.    Whether or not Plaintiff disputed any credit information, supplied by the Defendant, which reportings related to any of Plaintiff's personal identifiers including but not limited to name, address and social security number and the contents of said dispute.

39.    Whether or not the Defendant received notice from any consumer reporting agency that Plaintiff disputed any credit information, supplied by the Defendant, which reportings related to any of Plaintiff's personal identifiers including but not limited to name, address and social security number and the contents of said dispute.

40.    The time and form in which such dispute was received, and the identity of any persons reviewing or acting on it.

41.    The time, place, and manner in which any actions were taken in response to any such notice.

42.    The steps and measures that were taken in the course of investigating or reinvestigating any credit information supplied by the Defendant, which credit information related to any of Plaintiff's personal identifiers including but not limited to name, address and social security number.

43.    The content of any information which was used in order to investigate or reinvestigate any credit reporting dispute by Plaintiff's of credit information supplied by the Defendant.

44.    The identity of any individual who participated in or supervised any investigation or reinvestigation of a credit reporting dispute by Plaintiff's of credit information supplied by the Defendant.

45.    The existence and nature of the legal relationship between the Defendant and any consumer reporting agencies to which it reports credit information.

46.    Any conditions under which the Defendant has agreed to make its data available to the any consumer reporting agency to which it reports credit information.

47.    Whether or not the Defendant's actions in relation to its reporting of credit data relating to the Plaintiff was willful.

48.    Whether or not the Defendant willfully failed in its duties to properly investigate or reinvestigate credit disputes sent by the Plaintiff to consumer reporting agencies.

49.    Whether or not the Defendant's actions in investigating or reinvestigating its credit reporting relating to the Plaintiff was willful.

50.    The motive and intent of the Defendant's actions in relation to its reporting and investigation or reinvestigation of the credit information relating to Plaintiff's personal identifiers.

Plaintiff hereby requests all deponents bring all documents responsive to and in support of the categories listed above and present the originals of these documents for inspection and copying at the deposition.

Respectfully Submitted,

/s/ John G. Watts
**John G. Watts**
**Attorney for Plaintiff**

**OF COUNSEL:**
Watts Law Group, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattslawgroup.com

/s/ M. Stan Herring
**M. Stan Herring**
**Attorney for Plaintiff**

**OF COUNSEL:**
M. Stan Herring, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 714-4443
(888) 522-7167 *facsimile*
msh@mstanherringlaw.com

**PLEASE SERVE WITH THE SUMMONS AND COMPLAINT**



ELECTRONICALLY FILED
4/5/2008 1:58 PM
CV-2008-901075.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**

| | | |
|---|---|---|
| JOHNNY A. HOWARD, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action Number: |
| VERIZON WIRELESS SERVICES, LLC, a Corporation; TRANSUNION, LLC, a Corporation; | ) ) ) ) ) | |
| Defendants. | ) ) | |

**NOTICE TO TAKE DEPOSITION OF 30(b)(6) CORPORATE REPRESENTATIVE OF TRANSUNION, LLC**

Take notice, that the Plaintiff will take the deposition of the following entities or individuals pursuant to Alabama Rules of Civil Procedure. The deponent(s) must bring all documents listed in this deposition notice and any attachments, and present the originals of these documents for inspection and copying at the deposition. The deposition will continue until completed.

**DEPONANT:**      **Corporate Representative of TransUnion, LLC**

**DATE:**      **June 13, 2008**

**TIME:**      **9:00 a.m.**

**PLACE:**      **Watts Law Group, P.C.**
**700 29th Street South, Ste 201**
**Birmingham, AL 35233**

**Please note that pursuant to Alabama Rules of Civil Procedure 30(b)(5) & (6), this corporate Defendant must designate an individual to testify as to the following matters:**

1.    All allegations of fact stated in the complaint in this lawsuit.

2.    All affirmative defenses asserted by the Defendant.

3.    Whether or not Defendant's credit reporting on the Verizon account was accurate.

4.   The policies, procedures and practices put in place by the Defendant to insure that the investigations or reinvestigations initiated by Plaintiff would result in accurate credit reportings relating to Plaintiff.

5.   The definition of "accurate" and "verifiable" as those terms are used in Defendant's investigation or reinvestigation process.

6.   The nature and content of any records maintained by the Defendant--including archived copies and recorded conversations--relating to the investigation or reinvestigation of any trade lines appearing on Plaintiff's credit report.

7.   The number of reinvestigations of credit disputes handled by the Defendant on an annual basis and economic resources attributable to those investigations or reinvestigations.

8.   Any quotas or productivity targets for the Defendant's reinvestigators of credit disputes.

9.   Amount paid to and training provided to the employees responsible for reinvestigating disputed credit reportings made by the Defendant.

10.  The documents and informational resources available to the Defendant's employees who are responsible for reinvestigating disputed credit reportings made by the Defendant.

11.  The budgetary allocation of resources of the Defendant to reinvestigations of credit reporting disputes.

12.  The existence, nature, and content of any training provided to Defendant's employees or agents conducting reinvestigations.

13.  The nature, purpose, and means by which requests for reinvestigation are received and by which response may be made.

14.  The identity, content, and number of computer systems used to maintain data on consumers, their accounts, collections or applications and the access given to each of those systems.

15.  Scope of Defendant's employees' authority to correct credit reporting errors.

16.  Outsourcing by Defendant of any of the investigation or reinvestigation process.

17.     The existence and content of any policy or procedure for handling credit reporting reinvestigations.

18.     The documents which are regularly maintained by the Defendant relative to any  investigation or reinvestigation or credit reporting, and the content of those documents relative to the Plaintiff.

19.     The identity of any known witnesses to the allegations of fact stated in the complaint or the affirmative defenses asserted by the Defendant.

20.     The authenticity of any documents identified in any of the disclosures, pleadings, or discovery responses.

21.     The identity and expert credentials of any of the Defendant's employees or witnesses who were involved with or handled Plaintiff's account and/or any investigation or reinvestigation relative to Plaintiff's accounts.

22.     Any communications between the Defendant and the Plaintiff relating to the investigation or reinvestigation of any credit reporting relating to the Plaintiff.

23.     Any releases or waivers signed by the Plaintiff.

24.     Any insurance or bonding carried by the Defendant, which may provide coverage for the allegations in Plaintiff's complaint.

25.     Whether or not the Plaintiff is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq* ("FCRA") at § 1681a(c).

26.     The existence of, date of and receipt of any credit applications from the Plaintiff.

27.     Whether or not the Defendant regularly furnishes credit information to any credit reporting agencies.

28.     The procedures in place at the Defendant to insure that false or inaccurate information is not reported on any consumer's credit report.

29.     Whether or not the Defendant has reported credit information relating to any of Plaintiff's personal identifiers including but not limited to name, address and social security number.

30.     The time, place, manner, and content of any reporting of credit information relating to any of Plaintiff's personal identifiers including but not limited to name, address and social security number.

31.    The format of the Defendant's credit reportings from Verizon [e.g.] Metro or Metro II format.

32.    The content of each available data field or segment reported relating to any of Plaintiff's personal identifiers including but not limited to name, address and social security number.

33.    The capability of the Defendant's computer to reproduce records of past credit reportings of the Plaintiff.

34.    Whether or not Plaintiff disputed any credit information, supplied by the Defendant, which reportings related to any of Plaintiff's personal identifiers including but not limited to name, address and social security number and the contents of said dispute.

35.    The time and form in which any consumer dispute was received, and the identity of any persons reviewing or acting on it.

36.    The time, place, and manner in which any actions were taken in response to any such notice of a consumer dispute.

37.    The steps and measures that were taken in the course of investigating or reinvestigating any credit information supplied by Verizon, which credit information related to any of Plaintiff's personal identifiers including but not limited to name, address and social security number.

38.    The content of any information which was used in order to investigate or reinvestigate any credit reporting dispute by Plaintiff's of credit information supplied by the Defendant.

39.    The identity of any individual who participated in or supervised any investigation or reinvestigation of a credit reporting dispute by Plaintiff's of credit information supplied by the Defendant.

40.    The existence and nature of the legal relationship between the Defendant Verizon and Defendant.

41.    Whether or not the Defendant's actions in relation to its reporting of credit data relating to the Plaintiff was willful.

42.    Whether or not the Defendant willfully failed in its duties to properly investigate or reinvestigate credit disputes sent by the Plaintiff to consumer reporting agencies.

43.    Whether or not the Defendant's actions in investigating or reinvestigating its credit reporting relating to the Plaintiff was willful.

44.     The motive and intent of the Defendant's actions in relation to its reporting and investigation or reinvestigation of the credit information relating to Plaintiff's personal identifiers.

45.     Defendant's procedures to comply with § 1681(e) requirements.

Plaintiff hereby requests all deponents bring all documents responsive to and in support of the categories listed above and present the originals of these documents for inspection and copying at the deposition.

Respectfully Submitted,

/s/ John G. Watts
**John G. Watts**
**Attorney for Plaintiff**

**OF COUNSEL:**
Watts Law Group, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattslawgroup.com

/s/ M. Stan Herring
**M. Stan Herring**
**Attorney for Plaintiff**

**OF COUNSEL:**
M. Stan Herring, P.C.
700 29th Street South
Suite 201
Birmingham, AL  35233
(205) 714-4443
(888) 522-7167 *facsimile*
msh@mstanherringlaw.com

**PLEASE SERVE WITH THE SUMMONS AND COMPLAINT**